**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KIMBERLY KENNEDY,**<br>**459 15th Street N.E.**<br>**Washington, D.C. 20002**<br><br>        **Plaintiff,**<br><br>     **v.**<br><br>**BERKEL & COMPANY CONTRACTORS,**<br>**INC.**<br>**2649 S. 142 Street**<br>**Bonner Springs, Kansas 66012**<br><br>   **Serve:**<br>      **National Registered Agents, Inc.**<br>      **1015 15th Street, N.W.**<br>      **Suite 1000**<br>      **Washington, D.C. 20005**<br>      **Registered Agent**<br><br> **and**<br><br>**DWAYNE W. BRUCE,**<br>**522 47th Street**<br>**Baltimore, Maryland 21224**<br><br>        **Defendants.** | **Civil Action No.**<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Kimberly Kennedy, by and through her undersigned counsel, hereby brings this

Complaint against BERKEL & COMPANY CONTRACTORS, INC. ("Berkel") and DWAYNE

W. BRUCE ("Bruce") (collectively the "Defendants") for the discriminatory and harassing

treatment she faced while employed by Berkel between August and October 2015.  In addition to

suffering near-daily verbal, physical, and emotional abuse at Bruce's hands, Plaintiff was

repeatedly raped by Bruce and then summarily terminated by Defendants on the basis of her sex, her religion, and her refusal to consent to Bruce's unwelcome sexual advances in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq., the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-01401.01 et seq., and other applicable law.  In support of this complaint, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1342(a)(1), and 28 U.S.C. § 1367(a).  Plaintiff's Title VII causes of action arise under federal law, and her DCHRA and common law claims are so related to her federal claims that they form part of the same case or controversy.  In addition, Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. Plaintiff is a citizen of the District of Columbia, Defendant Berkel is a citizen of Kansas, and Defendant Bruce is a citizen of Maryland.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the acts giving rise to this claim occurred in the District of Columbia, and because at all relevant times Defendant Berkel conducted business in the District of Columbia and Defendant Bruce was employed in the District of Columbia.

## PARTIES

3.      Plaintiff Kimberly Kennedy resides in the District of Columbia.  Her address is 459 15th Street N.E., Washington, D.C.

4.      Defendant Berkel is a corporation organized under the laws of the State of Kansas.  Berkel's corporate headquarters are located at 2647 S. 142nd Street, P.O. Box 335, Bonner Springs, Kansas 66012.  According to its website, Berkel is a nationwide contractor that

performs specialty foundation work throughout the United States.  Upon information and belief,

Berkel employs thousands of individuals and is an employer within the meaning of Title VII and

the DCHRA.

5.      Defendant Dwayne Bruce resides in Maryland.  Upon information and belief, his

address is 522 47th Street, Baltimore, Maryland 21224.  Upon information and belief, Bruce was

a superintendent at Berkel during the relevant time period and in that capacity is an employer

within the meaning of the DCHRA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff timely filed a Charge of Discrimination with the Equal Opportunity

Employment Commission in the Washington Field Office ("EEOC") on April 20, 2016.  That

charge was cross-filed with the District of Columbia Office of Human Rights.  The EEOC issued

a Notice of Rights on March 30, 2017 and this suit follows.

## FACTUAL ALLEGATIONS

### Plaintiff Begins Working at Berkel

7.      Plaintiff has worked as a skilled laborer in the construction industry since 1998.

She moved to Washington D.C. in the summer of 2015.  In August 2015, Plaintiff was

unemployed, living in a homeless shelter in the District, and looking for construction work.

8.      At the time, Berkel was a subcontractor at 55 M Street N.E., Washington, D.C.

(the "Work Site").

9.      During the relevant time period, Bruce was the sole Work Site superintendent for

Berkel on location.  Upon information and belief, in that role, Bruce was responsible for hiring,

training, supervising, managing, and terminating Berkel employees on the site.  He was also

responsible for keeping track of employees' time by manually recording when they started and ended work each day.

10.     On or around August 20, 2015, Plaintiff submitted her resume to Bruce at the Work Site.

11.     Approximately one hour later, Bruce called Plaintiff and offered her a position as a skilled laborer.

12.     Bruce offered Plaintiff an hourly wage of $23.63 and overtime pay of $33.95 per hour. Plaintiff accepted the offer.

13.     Plaintiff returned to the Work Site later that day to begin work.

14.     When she arrived, Bruce instructed Plaintiff to complete tax and other employment documents, which Bruce faxed to Berkel's office. Plaintiff had no contact with any other Berkel employees in connection with her hiring. After she completed the requested documents, Bruce instructed Plaintiff to direct traffic.

15.     Plaintiff did not receive a Berkel employee handbook and was not informed of employee policies or procedures, including with respect to sexual harassment and misconduct. She received no notice of her rights as an employee within the District of Columbia. Plaintiff attended a brief safety meeting, but was not informed about Berkel's sexual harassment policies or instructions on how to report instances of sexual harassment.

16.     Defendant Bruce recorded the time that Plaintiff worked each week. Plaintiff received weekly paychecks from Berkel's corporate office in Kansas, which were handed to her by Bruce. Generally, Plaintiff worked eight hours a day, Monday through Friday, but sometimes worked overtime and on Saturdays.

17.     On information and belief, there were approximately 10 Berkel employees on the Work Site and approximately 50 to 65 employees of other companies.  All of the construction workers employed by Berkel on the site were male, except Plaintiff.

18.     In addition to directing traffic, Plaintiff's other duties included laying asphalt, cleaning the on-site trailer, which Bruce used as his office and as storage for supplies, and helping the crew with other tasks as needed.

19.     On her first day, Plaintiff directed traffic with another male employee at Berkel, who was also hired as a skilled laborer.

20.     From the beginning, Bruce constantly made inappropriate and hostile comments to and about this male employee, including about his sexuality.  Bruce referred to him as "my girlfriend" and by the female version of his first name.  Additionally, Bruce openly harassed the employee, who had served time in prison, about being raped while incarcerated.  Bruce also suggested the male employee engage in sexual acts in the trailer with others.

21.     Bruce soon turned his attention to Plaintiff, the lone woman on the Work Site. Bruce's behavior created a work environment that became unbearable for Plaintiff, first by prohibiting her from working or communicating with other employees and then, once she was isolated, by sexually harassing and then assaulting her, culminating in multiple rapes during the last week of her employment.

**Bruce Prohibits Plaintiff From Working In The Hole Because She Is A Woman And Isolates Her From The Other Employees**

22.     A few days after Plaintiff began work, Bruce reassigned the above-mentioned male employee from conducting traffic to excavating the foundation, which is referred to as "working in the hole," even though he was also a skilled laborer like Plaintiff.

23.     At that point, Plaintiff was the only employee who was not assigned to work in the hole.  On several occasions over the next few days, Plaintiff attempted to assist in the hole when there was no traffic to conduct, but Bruce repeatedly told her to return to street level and do something else.

24.     Plaintiff asked Bruce if she could work in the hole like the male employee because she had previous experience doing so.

25.     Bruce refused, asserting that women are distracting so that the other employees would get injured because of her presence.

26.     Instead, Bruce assigned Plaintiff to lay asphalt in a secluded area of the parking lot that was out of the view of employees working in the hole.  In addition, she cleaned the trailer that Bruce used as his office.

27.     During the same time period, Bruce witnessed Plaintiff speaking with construction workers employed by another company on the Work Site.  Bruce threatened that if Plaintiff spoke with them again, he would fire her.  Losing her job was Plaintiff's greatest fear because she was desperate to leave the homeless shelter where she was living and would not be able to support herself.

**Bruce Begins Sexually Harassing And Then Physically Assaulting Plaintiff**

28.     Once Bruce isolated Plaintiff, he began systematically sexually harassing her before his conduct rapidly escalated to inappropriate touching, sexual assault, and rape.

29.     On a daily basis, Bruce inappropriately flirted with Plaintiff and asked if she was married or in a relationship.  He made inappropriate comments about her physical appearance. For example, he told her that she has nice sized buttocks and is lucky that she does not have to try "poke it out" like other women.

30.     Plaintiff is of the Jewish faith and is celibate pursuant to her religion.  She repeatedly, unequivocally told Bruce that his advances made her uncomfortable, that she was not interested in dating him, and that she lives a religious life and does not date outside of marriage.

31.     Despite the clear boundaries that Plaintiff tried to set, Bruce did not stop inquiring about her personal life.  At one point, Bruce asked her to be his girlfriend.  Plaintiff repeated that she does not date outside of marriage because it is against her religion.  Bruce refused to accept her rejection.  Instead, he told her that he saw in her eyes that she liked him.

32.     Once rebuffed, Bruce harassed Plaintiff about her religion, accusing her of trying to be "perfect," and suggesting that she was trying to be a minister.

33.     One day, Plaintiff was cleaning the trailer alone.  Bruce entered the trailer and demanded a hug.  When Plaintiff refused, Bruce protested, claiming his "girlfriend gives people hugs all the time."  The next day, Bruce hugged Plaintiff without her consent and asked her how it felt.  Plaintiff responded "not good" and that the hug made her feel guilty.

34.     Even though Plaintiff had told Bruce multiple times that she did not date outside of marriage according to her religion, Bruce continued to pressure and forcibly hug Plaintiff on a near-daily basis without her consent.  On several occasions, he asked Plaintiff again whether she felt guilty when he hugged her.  She responded again that she did due to her religious beliefs.  Bruce ignored her and continued to hug her on a regular basis.

35.     Because Bruce physically forced himself on Plaintiff despite her protests and because he previously threatened to fire Plaintiff for simply speaking with others on the Work Site, Plaintiff felt powerless and feared she would lose her job and be unable to leave the homeless shelter if she tried to stop him.

36.     Emboldened by Plaintiff's isolation and inability to stop him, Bruce's advances escalated quickly to sexual assault when she was isolated in the trailer or in the secluded area of the parking lot.

37.     Every day, Bruce hugged Plaintiff, grabbed her, and rubbed his body against hers. The conduct became increasingly explicit such that several times a day, every day, Bruce approached Plaintiff from behind when she was not paying attention and rubbed his erect penis on her buttocks.  Plaintiff was unable to avoid him out of fear of retribution.

38.     The situation continued to escalate.  Plaintiff was cleaning the trailer alone when Bruce entered, grabbed her face, and forcibly kissed her.  Plaintiff tried to get away, but Bruce pinned her against the table.

39.     Bruce forced her to kiss him every day at work after that and on several occasions put his hands up her shirt and grabbed and kissed her breasts.  Plaintiff felt degraded and powerless, without means to stop Bruce's attacks without losing her job.  There was at least one instance when Bruce grabbed Plaintiff's wrist to prevent her from leaving the trailer and forced Plaintiff to kiss him.

40.     Bruce's improper and illegal behavior continued to escalate.  One day, as Plaintiff was leaving the trailer, Bruce exposed his penis.  Plaintiff was traumatized and disgusted.  She immediately left the Work Site.  Shortly after, Bruce called Plaintiff on her cell phone.  He asked if she ran away because his penis was "rusty."  Plaintiff again rejected his advances and told Bruce that she would not date outside of marriage.  Plaintiff then blocked Bruce's telephone number so that he could not call her again.  On information and belief, Bruce accessed Plaintiff's phone number from her employment records.

**Bruce Forces Plaintiff To Perform Oral Sex On Him**

41.     On Plaintiff's birthday, September 23, 2015, Bruce told Plaintiff he had a present for her.  He held up a piece of paper so others could not see what he was doing and flicked his tongue at her in a sexually suggestive way.  Bruce then verbally insinuated that he would perform oral sex on her.  Plaintiff again left the Work Site.  Bruce told Plaintiff she could go home early that day as a birthday present and she did.

42.     A few days later, Plaintiff was in the trailer cleaning alone.  Bruce entered and closed the door.  Bruce forcibly kissed Plaintiff, pushed her into a chair, unzipped his pants, and repeatedly slapped her face with his penis.  Bruce tried to force his penis in Plaintiff's mouth but Plaintiff resisted.  Bruce became angry and forced Plaintiff to perform oral sex on him.

43.     Bruce forced Plaintiff to perform oral sex on him three other days in the trailer, which he referred to as "putting the trailer on lock down."

44.     Bruce ejaculated in front of Plaintiff each time, including once on her clothing.

45.     On another occasion, Plaintiff received a telephone call while Bruce was assaulting her.  Bruce instructed her not to answer the telephone while she was doing her "job."

46.     Plaintiff was traumatized and afraid but felt that she had no alternative because she had been led to believe by Bruce that if she spoke to anyone, she would lose her job.

**Bruce Fires And Then Rapes Plaintiff**

47.     On the morning of September 30, 2015, Berkel superintendents from another Berkel work site delivered a load of pipes.  Plaintiff approached the truck to help the supervisors unload the truck.  They made small talk with Plaintiff.

48.     Bruce observed Plaintiff interacting with these superintendents and was angry.

49.     After they departed, Bruce handed Plaintiff a final, handwritten paycheck and stated that he was not transferring her to another site because the other superintendents said she was "too soft," which she understood to be a reference to her sex.  Plaintiff started crying.  Bruce told her "this is why I don't like to hire women."

50.     Berkel and Bruce had no legitimate basis to terminate Plaintiff.  Plaintiff had never received a complaint about the quality of her work while employed at Berkel and Bruce had previously informed Plaintiff that she would be transferred to another site once the current job was complete.

51.     Unlike Plaintiff, Berkel continued to employ or transferred, rather than terminated, the male and non-religious general laborers on the Work Site, as the project neared completion.

52.     Plaintiff left and tried, unsuccessfully, to find work at other local construction sites.  Desperate for work so that she could leave the homeless shelter, Plaintiff returned to the Work Site later that day, hoping to convince Bruce to change his mind.

53.     Plaintiff approached Bruce in the trailer and pled for her job.  In response, Bruce said he would "put the trailer on lockdown."  He closed the trailer door, then forced his penis into her mouth before forcing her to remove her pants and vaginally raping her while Plaintiff cried.  Bruce asked Plaintiff if she could get pregnant, withdrew from her, and then masturbated to ejaculation.  When Bruce was finished, he said he would call her about a job and Plaintiff left the trailer.

54.     Defendant Berkel knew or should have known that Defendant Bruce was using his authority as the superintendent on the Work Site to force Plaintiff to have sex with him, to

10

retaliate against Plaintiff when she resisted him, and to discriminate against Plaintiff based on her gender and her religion.

**Plaintiff's Emotional Trauma Prevents Her From Maintaining Gainful Employment**

55.     Plaintiff was hired as a general laborer by James Davis on or around October 2, 2015.  Plaintiff earned substantially less money at James Davis than she made at Berkel.

56.     Upon information and belief, Bruce made false and defamatory statements to other Berkel employees that the sexual assaults and rapes were consensual resulting in Berkel employees who would, for example, grab their crotch or sing "Super Freak" by Rick James when they saw her at James Davis.

57.     Plaintiff has suffered from severe depression and suicidal thoughts as a result of the traumatic harassment, abuse, rape, and unlawful treatment she suffered while working for Berkel.  Plaintiff's depression worsened considerably while she was employed by Davis. Plaintiff regularly cried and experienced suicidal thoughts that made it impossible for her to continue working there.

58.     Plaintiff was hospitalized in August 2016 due to her anguish.  During this hospitalization, she was diagnosed with post-traumatic stress disorder ("PTSD") and was prescribed medications to alleviate her symptoms, which made her physically ill.

59.     Since the hospitalization, she has been undergoing weekly treatment and still struggles daily with depression.

60.     Because of the trauma that Plaintiff experienced working at Berkel, Plaintiff is unable to work in the construction industry in which she had been employed for over 15 years and on which she depended on for her livelihood.  She has taken several training courses to learn new skills but has been unable to secure a new position.

61.     Plaintiff has been unable to maintain a job due to her PTSD, depression, and mental anguish, which make it difficult for her to focus, retain information, and learn new tasks. She was terminated on those grounds by the Laborers' International Union of North America ("LiUNA!") where she was briefly hired as an audit clerk after leaving James Davis.

**COUNT I**
**(Retaliation in Violation of Title VII Against Berkel)**

62.     Plaintiff incorporates paragraphs 1 to 61 as if fully set forth herein.

63.     Defendant Berkel is an employer within the meaning of Title VII.

64.     Plaintiff was an employee within the meaning of Title VII.

65.     Through the conduct described above, Plaintiff engaged in a protected activity when she repeatedly opposed Bruce's unwanted sexual harassment and abuse.

66.     Berkel retaliated against Plaintiff for engaging in that protected activity by taking several materially adverse employment actions against her, including but not limited to, isolating her from other employees to whom she could report the abuse, intensifying the hostile work environment, subjecting her to unsafe work conditions, restricting Plaintiff's job responsibilities and prohibiting her from working in the hole, refusing to transfer her to another job site, and terminating her employment.

67.     Defendant Berkel is liable for the discriminatory conduct described above, because the actions were committed by Plaintiff's supervisor with the authority to take tangible employment actions, including hiring and firing decisions and managing where particular employees worked on the site.

68.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and

emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

69.     Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

**COUNT II**
**(Quid Pro Quo Sexual Harassment in Violation of Title VII Against Berkel)**

70.     Plaintiff incorporates paragraphs 1 to 69 as if fully set forth herein.

71.     Defendant Berkel is an employer within the meaning of Title VII.

72.     Plaintiff was an employee and member of a protected class within the meaning of Title VII due to her sex.

73.     As a result of the conduct described above, Plaintiff was subjected to quid pro quo sexual harassment in violation of Title VII, because her continued employment and other employment benefits were premised upon Plaintiff's submission to Defendant Bruce's unwelcome sexual advances.

74.     Defendant Bruce's harassment culminated in a tangible employment action, including but not limited to, isolating her from other employees to whom she could report the abuse, intensifying the hostile work environment, subjecting her to unsafe work conditions, restricting Plaintiff's job responsibilities and prohibiting her from working in the hole, refusing to transfer her to another job site, and terminating her employment.

75.     As a direct and proximate result of the harassment described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and

emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

76.     Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT III
### (Hostile Work Environment Based on Sexual Harassment in Violation of Title VII Against Berkel)

77.     Plaintiff incorporates paragraphs 1 to 76 as if fully set forth herein.

78.     Defendant Berkel is an employer within the meaning of Title VII.

79.     Plaintiff was an employee and member of a protected class due to her sex within the meaning of Title VII.

80.     Through the conduct described above, Defendant Berkel subjected Plaintiff to a hostile work environment through a pervasive pattern of sexual harassment, abuse, and rape that altered the conditions of her employment.

81.     Plaintiff was subjected to this environment because she is a woman.

82.     Defendant Berkel is liable for the discriminatory conduct described above, because the actions were committed by Plaintiff's supervisor with the authority to take tangible employment actions, including hiring and firing decisions.

83.     The harassment suffered by Plaintiff resulted in tangible adverse employment actions including, isolating her from other employees to whom she could report the abuse, intensifying the hostile work environment, subjecting her to unsafe work conditions, restricting Plaintiff's job responsibilities and prohibiting her from working in the hole, refusing to transfer her to another job site, and terminating her employment.

84.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

85.     Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

### COUNT IV
### (Hostile Work Environment Based on Religious Discrimination in Violation of Title VII Against Berkel)

86.     Plaintiff incorporates paragraphs 1 to 85 as if fully set forth herein.

87.     Defendant Berkel is an employer within the meaning of Title VII.

88.     Plaintiff was an employee and member of a protected class due to her religion within the meaning of Title VII.

89.     Through the conduct described above, Defendants subjected Plaintiff to a hostile work environment because of her religion that was unwelcome and severe or pervasive enough to alter the conditions of her employment.

90.     Defendant Berkel is liable for the discriminatory conduct described above, because the actions were committed by Plaintiff's supervisor with the authority to take tangible employment actions, including hiring and firing decisions.

91.     The harassment suffered by Plaintiff resulted in tangible adverse employment actions including, isolating her from other employees to whom she could report the abuse, intensifying the hostile work environment, subjecting her to unsafe work conditions, restricting

Plaintiff's job responsibilities and prohibiting her from working in the hole, refusing to transfer her to another job site, and terminating her employment.

92.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

93.     Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## **COUNT V**
### **(Discriminatory Termination Based on Sex in Violation of Title VII Against Berkel)**

94.     Plaintiff incorporates paragraphs 1 to 93 as if fully set forth herein.

95.     Defendant Berkel is an employer within the meaning of Title VII.

96.     Plaintiff was an employee and member of a protected class due to her sex within the meaning of Title VII.

97.     Through the conduct described above, Plaintiff suffered an adverse employment action when she was terminated based on her sex.

98.     Defendant Berkel acted with discriminatory motive and treated Plaintiff less favorably than others.  Plaintiff performed her job satisfactorily and Berkel did not terminate similarly situated male employees, who were treated more favorably.

99.     As a direct and proximate result of the discriminatory termination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation,

embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

100.     Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

**COUNT VI**
**(Discriminatory Termination Based on Religion in Violation of Title VII Against Berkel)**

101.     Plaintiff incorporates paragraphs 1 to 100 as if fully set forth herein.

102.     Through the conduct described above, Plaintiff suffered an adverse employment action when she was terminated based on her religion.

103.     Defendant Berkel acted with discriminatory motive and treated Plaintiff less favorably than others.  Plaintiff performed her job satisfactorily and Berkel did not terminate similarly situated employees due to their religion, who were treated more favorably.

104.     As a direct and proximate result of the discriminatory termination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

105.     Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

**COUNT VII**
**(Retaliation in Violation of the DCHRA Against Berkel and Bruce)**

106.     Plaintiff incorporates paragraphs 1 to 105 as if fully set forth herein.

107.     Defendant Berkel is an employer within the meaning of the DCHRA.

108.    Defendant Bruce is an employer within the meaning of the DCHRA.

109.    Plaintiff was an employee within the meaning of the DCHRA.

110.    Through the conduct described above, Plaintiff engaged in a protected activity when she repeatedly opposed Bruce's unwanted sexual harassment and abuse.

111.    Bruce retaliated against Plaintiff for engaging in that protected activity by taking several materially adverse employment actions against her, including but not limited to, isolating her from other employees to whom she could report the abuse, intensifying the hostile work environment, subjecting her to unsafe work conditions, restricting Plaintiff's job responsibilities and prohibiting her from working in the hole, refusing to transfer her to another job site, and terminating her employment.

112.    Defendant Berkel is liable for the discriminatory conduct described above, because the actions were committed by Plaintiff's supervisor with the authority to take tangible employment actions, including hiring and firing decisions and managing where particular employees worked on the site.

113.    As a direct and proximate result of the retaliation described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

114.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendants Berkel and Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT VIII
### (Quid Pro Quo Sexual Harassment in Violation of the DCHRA Against Berkel and Bruce)

115.   Plaintiff incorporates paragraphs 1 to 114 as if fully set forth herein.

116.   Defendant Berkel is an employer within the meaning of the DCHRA.

117.   Defendant Bruce is an employer within the meaning of the DCHRA.

118.   Plaintiff was an employee and member of a protected class within the meaning of the DCHRA.

119.   As a result of the conduct described above, Plaintiff was subjected to quid pro quo sexual harassment in violation of the DCHRA, because her continued employment and other employment benefits were premised upon Plaintiff's submission to Defendant Bruce's unwelcome sexual advances.

120.   Defendant Bruce's harassment culminated in a tangible employment action, including Plaintiff's termination.

121.   As a direct and proximate result of the harassment described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

122.   Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT IX
### (Hostile Work Environment Based on Sexual Harassment in Violation of the DCHRA Against Berkel and Bruce)

123.   Plaintiff incorporates paragraphs 1 to 122 as if fully set forth herein.

124.   Defendant Berkel is an employer within the meaning of the DCHRA.

125.   Defendant Bruce is an employer within the meaning of the DCHRA.

126.   Plaintiff was an employee and member of a protected class within the meaning of the DCHRA.

127.   Through the conduct described above, Defendants subjected Plaintiff to a hostile work environment because of her sex that was unwelcome and severe or pervasive enough to alter the conditions of her employment.

128.   The harassment suffered by Plaintiff resulted in tangible adverse employment actions including, isolating her from other employees to whom she could report the abuse, intensifying the hostile work environment, subjecting her to unsafe work conditions, restricting Plaintiff's job responsibilities and prohibiting her from working in the hole, refusing to transfer her to another job site, and terminating her employment.

129.   As a direct and proximate result of the discrimination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

130.   Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT X
### (Hostile Work Environment Based on Religious Discrimination in Violation of the DCHRA Against Berkel and Bruce)

131.   Plaintiff incorporates paragraphs 1 to 130 as if fully set forth herein.

132.   Defendant Berkel is an employer within the meaning of the DCHRA.

133.    Defendant Bruce is an employer within the meaning of the DCHRA.

134.    Plaintiff was an employee and a member of a protected class within the meaning of the DCHRA.

135.    Through the conduct described above, Defendants subjected Plaintiff to a hostile work environment because of her religion that was unwelcome and severe or pervasive enough to alter the conditions of her employment.

136.    Defendant Berkel is liable for the discriminatory conduct described above, because the actions were committed by Plaintiff's supervisor with the authority to take tangible employment actions, including hiring and firing decisions.

137.    The harassment suffered by Plaintiff included adverse employment actions, including Plaintiff's termination.

138.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

139.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT XI
### (Discriminatory Termination Based on Sex in Violation of the DCHRA Against Berkel and Bruce)

140.    Plaintiff incorporates paragraphs 1 to 139 as if fully set forth herein.

141.    Defendant Berkel is an employer within the meaning of the DCHRA.

142.    Defendant Bruce is an employer within the meaning of the DCHRA.

143.    Plaintiff was an employee and member of a protected class within the meaning of the DCHRA.

144.    Through the conduct described above, Plaintiff suffered an adverse employment action when she was terminated because of her sex, which gives rise to an inference of discrimination.

145.    As a direct and proximate result of the discrimination termination described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

146.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

### COUNT XII
### (Discriminatory Termination Based on Religion in Violation of the DCHRA Against Berkel and Bruce)

147.    Plaintiff incorporates paragraphs 1 to 146 as if fully set forth herein.

148.    Through the conduct described above, Plaintiff was terminated based on religious discrimination because she is a member of a protected class, she performed her job satisfactorily, other similarly situated employees were not terminated but were instead treated more favorably, and Defendant Bruce acted with discriminatory motive or treated Plaintiff less favorably than others due to her religion.

149.    As a direct and proximate result of the discriminatory treatment described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation,

embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

150.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

**COUNT XIII**
**(Tortious Interference with Business Relations or Expectancy Against Bruce)**

151.    Plaintiff incorporates paragraphs 1 to 150 as if fully set forth herein.

152.    Through the conduct described above, Bruce tortuously interfered with Plaintiff's employment by Berkel.  As a result of that interference, Plaintiff suffered economic damages.

153.    Plaintiff had a valid business relationship or expectancy with Berkel.

154.     Defendant Bruce had knowledge of Plaintiff's business relationship or expectancy with Berkel.

155.    Defendant Bruce maliciously and intentionally interfered, induced or caused a breach or termination of Plaintiff's business relationship or expectancy with Berkel by terminating Plaintiff for an improper or illegal purpose.

156.    As a direct and proximate result of the tortious interference with business relations described above, Plaintiff has suffered substantial injury.  Plaintiff made substantially less money at James Davis than she made at Berkel.  She has also been unable to obtain and maintain a job due to the emotional trauma, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts that were caused by Defendant Bruce's conduct.  Plaintiff has suffered and will continue to suffer irreparable harm for which she should be compensated.

157.    Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

**COUNT XIV**
**(Negligent Hiring, Supervision, Training and Retention Against Berkel)**

158.    Plaintiff incorporates paragraphs 1 to 157 as if fully set forth herein.

159.    Berkel was negligent in its hiring, supervision, training and retention of Defendant Bruce.

160.    Defendant Bruce behaved in a dangerous or otherwise incompetent manner by using his authority provided by Berkel to not only bully Plaintiff by isolating Plaintiff from other employees but also sexually harass and abuse Plaintiff.

161.    Berkel knew or should have known of Defendant Bruce's dangerous or incompetent behavior.

162.    Defendant Berkel, armed with that actual or constructive knowledge, failed to adequately supervise or train Defendant Bruce enabling Defendant Bruce to engage in the conduct described above.

163.    As a direct and proximate result of the negligence described above, Plaintiff was sexually harassed, sexually assaulted, raped, and discriminated against on the basis of her gender and religion and suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

164.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT XV
### (Negligence Against Berkel)

165.    Plaintiff incorporates paragraphs 1 to 164 as if fully set forth herein.

166.    Defendant Berkel was Plaintiff's employer.

167.    As Plaintiff's employer, Defendant Berkel owed a duty of care to Plaintiff to, *inter alia*, provide Plaintiff a safe working environment free from unlawful employment practices and unlawful discrimination.

168.    Defendant Berkel breached that duty of care by failing to prevent or stop the unlawful employment practices and unlawful discrimination.

169.    As a direct and proximate result of the negligence described above, Plaintiff was sexually harassed, sexually assaulted, raped, and discriminated against on the basis of her gender and religion and suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

170.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT XVI
### (Wrongful Termination and Discharge Against Berkel)

171.    Plaintiff incorporates paragraphs 1 to 170 as if fully set forth herein.

172.    Plaintiff was wrongfully terminated and discharged contrary to public policy.

173.    Defendant Bruce wielded his authority over Plaintiff as her supervisor to verbally assault, sexually harass, abuse, and rape Plaintiff contrary to public policy.

174.    Plaintiff was terminated because of her sex and religion when she opposed Defendant Bruce's sexual advances and harassment.

175.    As a direct and proximate result of the wrongful termination and discharge described above, Plaintiff was sexually harassed, sexually assaulted, raped, and discriminated against on the basis of her gender and religion and suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and the deprivation of her rights to equal employment opportunities.

176.    Through the conduct of Defendant Berkel and its agents and/or representatives including Defendant Bruce, Defendant Berkel acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## COUNT XVII
### (Assault Against Bruce)

177.    Plaintiff incorporates paragraphs 1 to 176 as if fully set forth herein.

178.    Through the conduct described above, Defendant Bruce intended to and did cause harmful or offensive contact with Plaintiff on multiple occasions.

179.    Through the conduct described above, Defendant Bruce also intended to and did repeatedly cause Plaintiff to suffer the imminent apprehension of harmful or offensive contact.

180.    Plaintiff repeatedly suffered harm caused by Defendant Bruce's harmful or offensive contact or the imminent apprehension thereof.

181.    As a direct and proximate result of the assault described above, Plaintiff was sexually harassed, sexually assaulted, raped, and discriminated against on the basis of her gender

and religion and suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

182.    Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## COUNT XVIII
### (Battery Against Bruce)

183.    Plaintiff incorporates paragraphs 1 to 182 as if fully set forth herein.

184.    Through the conduct described above, Defendant Bruce intended to and did cause harmful or offensive contact with Plaintiff on multiple occasions.

185.    Plaintiff repeatedly suffered harm caused by Defendant Bruce's harmful or offensive contact for which she should be compensated.  As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

186.    As a direct and proximate result of the battery described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, suicidal thoughts, and suicidal thoughts.

187.    Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## COUNT XIX
### (False Imprisonment Against Bruce)

188.    Plaintiff incorporates paragraphs 1 to 187 as if fully set forth herein.

189.    Through the conduct described above, Defendant Bruce repeatedly unlawfully detained Plaintiff against her will within boundaries fixed by the defendant by physically restraining her in the trailer and forcing her to engage in sexual acts.

190.    As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

191.    Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

192.    As a direct and proximate result of the false imprisonment described above, Plaintiff has suffered substantial injury.  Plaintiff has suffered, and will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

## COUNT XX
### (Intrusion upon Plaintiff's Seclusion or Solitude Against Bruce)

193.    Plaintiff incorporates paragraphs 1 to 192 as if fully set forth herein.

194.    Through the conduct described above, including by calling Plaintiff on her mobile phone to continue the verbal abuse and sexual harassment outside of working hours, Defendant Bruce invaded and interfered with Plaintiff's private and secret concerns through improperly intrusive means, which would be highly offensive to an ordinary, reasonable person.

195.    As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

196.    Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

### COUNT XXI
### (Public Disclosure of Private Facts Against Bruce)

197.    Plaintiff incorporates paragraphs 1 to 196 as if fully set forth herein.

198.    Through the conduct described above, Defendant Bruce disclosed publicly private facts concerning his sexual harassment and abuse of Plaintiff.  These statements were not subject to waiver or privilege, the public had no legitimate concerns about these statements, and these statements were highly offensive to Plaintiff and would be highly offensive to a reasonable person of ordinary sensibilities.

199.    As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

200.    Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## COUNT XXII
### (Intentional Infliction of Emotional Distress Against Bruce)

201.     Plaintiff incorporates paragraphs 1 to 200 as if fully set forth therein.

202.     Through Bruce's conduct described above, *inter alia*, his pattern of sexual harassment and repeated verbal abuse, Defendant Bruce engaged in extreme and outrageous conduct which intentionally and recklessly caused Plaintiff severe emotional distress.

203.     As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

204.     Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## COUNT XXIII
### (Negligent Infliction of Emotional Distress Against Bruce)

205.     Plaintiff incorporates paragraphs 1 to 204 as if fully set forth therein.

206.     Through the conduct described above, Defendant Bruce undertook an obligation to Plaintiff as her supervisor that necessarily implicated Plaintiff's emotional well-being.  Bruce owed Plaintiff a special duty of care given his isolation of her on the worksite and his prevention of her from communicating with others, effectively rendering her beholden to him.

207.     Given that Defendant Bruce supervised and had the authority to hire and fire Plaintiff, it was especially likely that Defendant Bruce's negligence would cause serious emotional distress to Plaintiff.

208.     Defendant Bruce's negligent actions or omissions breached this duty to provide for Plaintiff's emotional well-being, by directly exposing her to danger through his repeated

isolation of Plaintiff and sexual harassment and assaults, which caused serious emotional distress to Plaintiff.

209.     As a result, Plaintiff has suffered, and in the future will continue to suffer, irreparable loss and harm, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

210.     Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## COUNT XXIV
### (Defamation Against Bruce)

211.     Plaintiff incorporates paragraphs 1 to 210 as if fully set forth herein.

212.     Through the conduct described above, Defendant Bruce made false and defamatory statements about Plaintiff, which he published to a third party, publishing those statements was at least negligent, and Plaintiff suffered either actual or legal harm as a result, including but not limited to, physical harm, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, depression, and suicidal thoughts.

213.     Defendant Bruce acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights and physical and emotional well-being in carrying out this conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a final judgment finding the Defendants jointly and severally liable to Plaintiff on all counts and to enter an Order:

a.      Awarding Plaintiff any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions.  Plaintiff should be accorded, *inter alia*, the pay and benefits illegally delayed and/or withheld from the date she first suffered harassment and/or retaliation at the hands of Defendants.

b.      Awarding reinstatement at Berkel or front pay for Plaintiff if reinstatement is not possible;

c.      Awarding punitive damages to Plaintiff for Defendants' willing, deliberate, malicious, and outrageous conduct, and to deter Defendants from engaging in such misconduct in the future;

d.      Awarding damages for the pain, suffering, and humiliation caused to her by the actions of Defendants;

e.      Awarding damages for the expenses incurred to date and in the future for her ongoing medical and psychological treatment;

f.      Awarding the costs of this litigation;

g.      Awarding reasonable attorneys' fees and litigation costs; and

h.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  June 26, 2017

Respectfully submitted,


/s/ Theodore C. Whitehouse
Theodore C. Whitehouse (DC Bar# 298331)
Hayley T.J. Tozeski* (DC Bar# 1017283)
Stephanie L. Klock* (DC Bar# 1033586)
Elizabeth J. Jonas* (DC Bar # 1044170)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C.  20006
Telephone: (202) 303-1000
Fax:  (202) 303-2000
E-mail: twhitehouse@willkie.com

Matthew K. Handley (DC Bar# 489946)
Dennis A. Corkery (DC Bar# 1016991)
WASHINGTON LAWYER'S
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036
Telephone: 202-319-1000
Fax: 202-319-1010
E-mail:  Matthew_handley@washlaw.org;
Dennis_corkery@washlaw.org

*Application for admission to District Court
pending