IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIMBERLY KENNEDY

    Plaintiff

v.

BERKEL & COMPANY
CONTRACTORS, INC., et al.

    Defendant

Case No. 1:17-cv-01248-DLF

## REPLY BRIEF TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING JURY INSTRUCTIONS

Defendants have filed their Opposition to Plaintiff's Supplemental Brief Regarding Jury Instructions and it is clear that the parties have different opinions concerning the proper way to instruct the jury in this complicated case. Plaintiff is willing to accept some of Defendants' instructions, but believes that even those instructions that are basically acceptable need some tweaking. For other instructions, mostly those dealing with the complicated nature of *Faragher/Ellerth* and the nature of when Defendant Berkel is liable for the acts of Defendant Bruce, and the manner in which punitive damages might be assessed in this situation, Plaintiff believes that the parties are far apart and need the expert guidance of the Court to help fashion instructions that will elucidate the issues rather than make them too complex for a jury, who will come to this case without the nuanced knowledge of these issues which even perplex counsel.

1. Instructions on Damages

The parties are not that far apart on how the jury should be instructed on compensatory damages. Plaintiff is willing to accept Defendants' instruction, but believes that the one

proposed does not adequately cover all the areas of damages that the jury may properly consider. Defendants' proposed instruction (Model Federal Civil Jury Instruction 88-70) omits both past and future medical bills and omits damages for disability and physical injuries as areas that the jury should consider. With the addition of those items, and elimination of the word "other," which is not applicable, paragraph two of the instruction (three in the standard instruction) should read as follows:

"You must determine the amount of any damages sustained by Plaintiff, such as past medical bills, future medical bills, physical injuries, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, and disability."

With this change, Plaintiff finds the instruction acceptable.

2. Aggravation of Pre-Existing Condition and Special Susceptibility Instructions

The evidence is replete with information that might lead a jury to conclude either that the Plaintiff aggravated a prior condition or that she was especially susceptible to injury from Defendant Bruce's actions. While the record also reflects that the Plaintiff was not suffering from any mental illness or disability at the time of her hiring at Berkel, the record does reflect a significant past history of trauma that is in the records, especially those from the D.C. Rape Crisis Center and in the report from Plaintiff's psychiatric expert, which will form the basis of her testimony. That expert, Eindra Khin Khin, M.D., reports that

> When [the Plaintiff] was fourteen years old, while coming back from school, a male stranger pulled her into an alley. She was screaming and fighting him off. A car passing by saw this and pulled over, which led to the assailant fleeing the scene. . . . When she was fifteen years old, while working as a babysitter, she was raped once by the father of the family that she was babysitting for. . . . Sometime in her late teen years, before her first marriage, she reported that she was raped by an acquaintance once ("who pretended to be religious") while she was in his

> house. . . .   When she was thirty-eight to thirty-nine years old, she was raped by an upstanding man in the community ("a professor at the University of Chicago") at his home. . . . Sometime in her thirties or forties, she was approached by a police officer in his police car. She stated that he tried to flirt with her and asked her for sexual favors. It did not go further than that. In her fifties, a young man she knew through her daughter came to her house. After letting him in, he raped her in her own home.

(Exhibit X-79, Khin Khin Independent Medical Examination, at 5-6).

Dr. Khin Khin concluded that

> Although [the Plaintiff] has suffered multiple traumatic events in her earlier life including four rapes, she had a good level of resilience and did not appear to have had any significant psychiatric problems prior to 2015. It is important to note the difference in the nature of the earlier rapes and the 2015 sexual assault/rape. Unlike the 2015 experience, the earlier rapes she suffered were one-time events. She did not return to the same person or place after each of these rapes. In 2015 when the sexual harassment and assaults started at her workplace at Berkel, she was in a particularly vulnerable place in her life, as she desperately needed that job. . . . Although she did what she could to reject her supervisor's sexual advances, she felt helpless and powerless to do more at the time without jeopardizing her job and her livelihood. Despite the repeated sexual advances and assaults, she felt like she had no choice but to return to work the next day.

(Exhibit X-79, Khin Khin Independent Medical Examination, at 14).

The evidence will thus contain quite a significant amount of relevant trauma, and a jury might conclude that the actions of Defendant Bruce harmed the Plaintiff in that they 1) were completely new trauma; or 2) that they exacerbated Plaintiff's pre-existing mental or emotional state; and/or that 3) the Plaintiff was especially susceptible to the trauma because of her previous traumatic experiences.

Pending the exposition of the evidence at trial, Plaintiff believes that the Court should be prepared to give both instructions to the jury.

### 3. *Faragher/Ellerth* Instruction

Instructing the jury on Defendant Berkel's vicarious and other liability due to Defendant Bruce's actions is complicated. Counsel have struggled to come to agreement on these issues, without success. Plaintiff's counsel believes that the instructions that they presented in their Supplemental Brief come closer to the ideal, but there is still much work to do to fashion appropriate and straightforward instructions.

Plaintiff believes, as her flow chart exemplifies, that there are multiple paths to a determination of whether Berkel is responsible for Bruce's actions. First, Plaintiff believes that, if the jury finds that Bruce was Plaintiff's supervisor, then Berkel is vicariously liable for Bruce's actions. In order for Bruce to be Plaintiff's supervisor, he had to be in a position where he could take a tangible employment action regarding the Plaintiff. It is not necessary that he actually took a tangible employment action. Second, even if Bruce is not deemed by the jury to have been Plaintiff's supervisor, if there was an adverse tangible employment action, then Berkel is vicariously liable for Bruce's actions. Third, if the jury finds that Bruce was not Plaintiff's supervisor nor that there was a tangible employment action, Berkel might still be responsible for Bruce's actions if management knew or should have known what was occurring. Finally, if the jury finds none of these to be true, but finds that there was a hostile work environment, then the jury must decide whether Berkel has proven that it exercised reasonable care to prevent and promptly correct the discriminatory behavior and, if Berkel had policies that adequately prevented such behavior, whether the Plaintiff unreasonably failed to take advantage of Berkel's internal complaint and reporting process. Only if the Plaintiff has failed to prove the first three items, and the defense has proven the last two items, can Berkel escape liability for the discriminatory behavior at the Berkel worksite.

While the Plaintiff still believes that there is work to be done on the overall *Faragher/Ellerth* jury instructions, as to the definition of "Tangible Employment Action," Plaintiff accepts the modified 9th Circuit instruction proposed by Defendants.

4. Punitive Damages Instruction

Plaintiff can accept Model Federal Jury Instruction 88-72, with some further clarifications from the version proposed by Defendants. Plaintiff would agree to the following language:

> The law permits the jury under limited circumstances to award an injured person punitive damages.[1] [**unchanged**]
>
> If you find in favor of Plaintiff's Title VII and/or DCHRA claims, then you must decide whether either defendant acted with malice or with reckless indifference to the Plaintiff's right not to be discriminated against. A defendant acts with malice or reckless indifference if:
>
> it has been proved that either defendant knew that the termination or harassment was in violation of the laws prohibiting discrimination, or acted with reckless disregard of that law, that is with an intention to disregard what he knew was a high probability that their acts were in violation of the law. [**non-substantive changes only**]
>
> However, you may not award punitive damages against Defendant Berkel if it has been proved that Defendant Berkel made a good-faith effort to comply with the law prohibiting discrimination and that Defendant Bruce was therefore acting in contradiction of company policy and practice. [**changed to clarify the parties**]
>
> If you find that either Defendant acted with malice or reckless disregard and did not make a good-faith effort to comply with the law, you may, but are not required to, award the Plaintiff an amount of punitive damages if you find that it is appropriate to punish the defendant or to deter the defendant and others from like conduct in the future. Whether to award the plaintiff

---

[1] Plaintiff continues to believe that her punitive damages instruction is clearly and better informs the jury regarding the purpose and elements regarding punitive damages.

punitive damages, and the amount of those damages, are within your discretion. **[unchanged]**

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court modify the jury instructions as appropriate.

Respectfully submitted,
/s/*Philip B. Zipin*
Philip B. Zipin, Bar Number: 03932
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 240-839-9142
Email: pzipin @ zagfirm.com


/s/ *Norman G. Schneider*
Norman G. Schneider, 415524
Kamerow Law Firm, PLLC
4900 Leesburg Pike, Suite 310
Alexandria, Virginia 22302
(703) 370-8088
nschneider @ kamerowlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2021, I served a copy of the foregoing on Defendants, via this Court's CM/CF system, through their counsel of record.

/s/*Philip B. Zipin*
Philip B. Zipin